UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JEANETTE M.,

        Plaintiff,                                Case No. 1:20-cv-15488
                                                           Magistrate Judge Norah McCann King

   v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        Defendant.

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Jeanette M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying, in part, that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On May 11, 2017, Plaintiff filed her application for benefits, alleging that she has been disabled since March 17, 2014. R. 117, 134, 234–35. The application was denied initially. R. 137–42. Following Plaintiff's request for reconsideration, R. 143, a concurrent interim onset

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

notice dated March 23, 2018, found Plaintiff to be disabled as of November 15, 2017, R. 144–45; *see also* R. 146–49 (notice of award dated April 16, 2018). Plaintiff sought a *de novo* hearing before an administrative law judge, seeking to establish an earlier date of onset of disability. R. 150–51. Administrative Law Judge ("ALJ") Trina Moore held a hearing on August 1, 2019, R. 61–102, and a supplemental hearing on December 11, 2019, R. 42–60. Plaintiff, who was represented by counsel, testified at both hearings, as did a vocational expert. *Id*. In a decision dated December 26, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 17, 2014, Plaintiff's alleged disability onset date, "through the date of this decision." R. 13–30.² That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 14, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 18, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 8.³ On March 19, 2021, the case was reassigned to the undersigned. ECF No. 9. The matter is now ripe for disposition.

II.   **LEGAL STANDARD**

   A.   **Standard of Review**

   In reviewing applications for Social Security disability benefits, this Court has the

---

² The ALJ's reference "through the date of this decision" appears to be an inadvertent error; the ALJ expressly stated at the outset of her decision that she "does not disturb the State agency's finding of disability as of November 15, 2017 (Exhibits 4A, 5B, 6B). Accordingly, *this decision considers only the claimant's allegations of disability from March 17, 2014 through November 14, 2017*." R. 13 (emphasis added).

³ The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

4

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 42 years old on March 17, 2014, her alleged disability onset date. R. 29. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 15.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: traumatic brain injury; post-concussion syndrome; migraines; cervical degenerative disease; cervical radiculopathy; trochanteric bursitis; generalized anxiety disorder; major depressive disorder; and post-traumatic stress disorder ("PTSD"). R. 15–16. The ALJ also found that Plaintiff's diagnosed endometriosis, hypothyroidism, dysphagia, and gastroparesis were not severe. R. 16

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing prior to November 15, 2017. R. 16–20.

At step four, the ALJ found that, during the relevant time period, Plaintiff had the RFC to perform light work subject to various additional limitations. R. 20–29. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a high school teacher. R. 29.

At step five, the ALJ found that a significant number of jobs–*i.e.*, approximately 24,358 jobs as an inspector / hand packager; approximately 17, 465 jobs as a small products assembler; approximately 74,460 jobs as a shipping and receiving weigher; approximately 36,000 jobs as a mail clerk; approximately 65,000 jobs as an office helper; and approximately 81,000 jobs as a hand packer–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 29–30. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act between March 17, 2014, her alleged disability onset date, and November 15, 2017, the date of onset of disability found by the state agency. R. 30.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 12; *Plaintiff's Reply Brief*, ECF No. 18. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 17.

IV.   **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

Plaintiff, formerly a high school teacher with a Master's degree, sustained a closed head

injury and concussion on March 17, 2014, when she was hit in the head with a volleyball while refereeing a volleyball game, which caused her to slam her head into a cement wall. R. 22.

Adalisse Borges, Ph.D., a state agency psychological consultant, conducted an initial review of Plaintiff's medical record on July 28, 2017. R. 103–16. Dr. Borges considered Listings 11.18, which at the time addressed traumatic brain injury, and 12.15, which addressed trauma- and stressor-related disorders, but concluded that Plaintiff's medical condition did not meet the criteria for a listed impairment. R. 109. In reaching this conclusion, Dr. Borges determined that, *inter alia*, as to the paragraph B criteria of Listing 12.15, Plaintiff had moderate limitations in all four areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id*. Under the heading "MRFC – Additional Explanation[,]" Dr. Borges went on to explain as follows:

> AOD 03/17/2014
>
> Allegations of Impairments:
> PTSD
> anxiety
> depression
>
> 3373: violent at times, change of mood, PTSD, anxiety, sense of paranoia, memory and concentration difficulties, also handling stress.
>
> Family care 12/2014- 02/2015 depressed. Adjustment disorder, anxiety.
>
> JEFFERSON 2014 variable efforts, low processing speed, memory impaired, mild moderate symptoms of anxiety and depression. Average intellectual functioning.
>
> COASTAL PHYSICIANS 04/2015 Memory impairment.
>
> SO JERSEY SPORTS MEDICINE 2015 main concern anxiety. Post concussive syndrome with dystonia; Anxiety and depression. Wellbutrin.
>
> Susan Cohen DR 11/2015- 05/2017 isolation, irritability, death thoughts; euthymic but anxious, difficulty focusing, forgetful, adequate judgment. Prognosis poor. Ox: PTSD, Post concussion. Wellbutrin 300, Buspirone 10 TIO, Lorazepam 1 BID and Valium 5.

> Howard Hammer DR 03/2015- 07 /2017: poor focus - concentration and memory, fair judgment, easily overwhelmed. Adjustment disorder, anxiety and depressed mood.
>
> ANALYSIS: Evidence supports moderate symptoms and limitations secondary to TBI. Clmt is not able to perform complex/ detailed procedures but is able to perform simple tasks.

R. 114.[4]

In February 2018, Christopher Williamson, Psy.D., performed a consultative psychological evaluation of Plaintiff at the request of the state agency. R. 2404-06. On clinical examination, Plaintiff was "extremely anxious" and her mood was depressed and anxious. R. 2405. She could complete simple mathematical calculations but "but struggled with multistep verbally presented calculations which was extremely upsetting to her." *Id*. Her overall fund of knowledge appeared to be "below her premorbid level of functioning." *Id*. On the WAIS-4th ed., Plaintiff achieved a verbal IQ score of 76, a performance IQ score of 67, and a full scale IQ score of 61. *Id*. "Her ability to sustain attention, concentrate, and exert mental control is in the extremely low range … with a Working Memory Index score equal to 66." R. 2406. Dr. Williamson concluded:

> She presents with ongoing issues of a diagnosis of traumatic brain injury secondary to a closed head injury. She presents with ongoing issues of chronic anxiety as well as major depressive disorder secondary to her head injury to which she continues to treat with a neuropsychologist, psychologist, and neurologist. Her overall condition appears to be chronic in nature. Her overall prognosis remains guarded due to the chronicity of her symptom presentation.

*Id*.

That same month, Stephen Kleinman, M.D., reviewed Plaintiff's medical record upon

---

[4] On August 9, 2017, another state agency medical consultant at the initial stage of review agreed with Dr. Borges' opinions. R. 2371–74 (containing Exhibits 44F and 45F).

reconsideration for the state agency. R. 120–33. In considering the evidence of Plaintiff's mental impairment, Dr. Kleinman noted as follows:

> Dr Williamson
> 2/15 /18 Cl struggle to do simple math problems.
> WAISIQ
> VCl76
> PRI 67
> WMI 66
> PSI 53
> FSIQ61
> TBI, this cl used to be a math teacher, with a Master degree. Now, FSIQ is 61 due to TBI.
>
> *The medical evidence reveals condition meets 12.02AB*.

R. 127 (emphasis added). According to Dr. Kleinman, Plaintiff had "marked" limitations in her abilities to understand, remember, or apply information; concentrate, persist, or maintain pace; and adapt or manage herself, and a moderate limitation in her ability to interact with others. R. 128. Referring to Dr. Williamson's evaluation, Dr. Kleinman commented, "[c]learly has had severe deterioration in premorbid cognitive function given previous capacity as teacher. Meets listing 12.02AB." *Id*.; *see also* R. 129 (reflecting under the heading entitled, "Adult Medical Disposition[,]" "Meets Listing – The severity of one or more of the MDI(s) meets current listing criteria 12.02-AB Neurocognitive Disorders"). Dr. Kleinman established Plaintiff's disability onset date at November 15, 2017, offering the following explanation: "FSIQ 61 of 2/15/2018 CE. 3 months prior to this CE has been used as EOD. Prior to the CE, condition severe, but not of listing level." R. 132.

V.   **DISCUSSION**

Plaintiff raises a number of challenges, including, *inter alia*, her contention that the ALJ erred at step three of the sequential evaluation when finding that Plaintiff's impairments did not meet or medically equal a listed impairment as of the date of her closed head injury. Social

Security Ruling ("SSR") 18-01p governs the determination of onset dates in disability claims. SSR 18-01p, 2018 WL 4945639, Determining the Established Onset Date (EOD) in Disability Claims (Oct. 2, 2018); *see also id*. at *7 ("This SSR is applicable on October 2, 2018. We will use this SSR beginning on its applicable date. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date."); 20 C.F.R. § 402.35(b)(2) ("Social Security Rulings . . . are binding on all components of the Social Security Administration."). SSR 18-01p provides, *inter alia*, as follows:

> If we find that a claimant meets the statutory definition of disability and meets the applicable non-medical requirements during the period covered by his or her application, we then determine the claimant's [Established Onset Date] [("]EOD["])]. Generally, the EOD is the earliest date that the claimant meets both the definition of disability and the non-medical requirements for entitlement to benefits under title II of the Act or eligibility for SSI payments under title XVI of the Act during the period covered by his or her application.

SSR 18-01p, 2018 WL 4945639, at *2. The Ruling distinguishes between disabilities resulting from trauma and those with a non-traumatic origin. *Id*. at *5–6. For the former, an ALJ must "begin with the date of the traumatic event, even if the claimant worked on that date." *Id*. at *5. "If the evidence of record supports a finding that the claimant met the statutory definition of disability on the date of the traumatic event or traumatic injury, [the ALJ] will use that date as the date that the claimant first met the statutory definition of disability." *Id*. at *5. The Commissioner determined that Plaintiff's mental impairment met Listing 12.02, which addresses neurocognitive disorders, but only as of November 15, 2017. Plaintiff contends that her date of onset of disability should be March 17, 2014, the date on which she suffered a traumatic brain injury. *Memorandum of Law*, ECF No. 12, pp. 19–28. The Acting Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff did not meet a listed impairment

prior to the established disability onset date and that "Plaintiff is essentially asking this Court to do something that it cannot do under the Act – re-weigh the evidence and resolve evidentiary conflicts in her favor." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 17, pp. 10–15.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of any of the impairment in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

At the time of the ALJ's decision, Listing 12.02 addressed neurocognitive disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02 (eff. Mar. 14, 2018 to Apr. 1, 2021).[5] A claimant meets the required level of severity for this listing when the requirements of both paragraphs A and B are satisfied, or when the requirements of both paragraphs A and C are satisfied:

> A. Medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas:
>
> 1. Complex attention;
> 2. Executive function;
> 3. Learning and memory;
> 4. Language;
> 5. Perceptual-motor; or
> 6. Social cognition.
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two,[6] of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).
>
> OR
>
> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

---

[5] Neurocognitive disorders are characterized "by a clinically significant decline in cognitive functioning. Symptoms and signs may include, but are not limited to, disturbances in memory, executive functioning (that is, higher-level cognitive processes; for example, regulating attention, planning, inhibiting responses, decision-making), visual-spatial functioning, language and speech, perception, insight, judgment, and insensitivity to social standards." *Id*. at § 12.00B1a. Included in such disorders is "traumatic brain injury." *Id*. at § 12.00B1b, c.

[6] A "marked" limitation means that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id*. at § 12.00F2d.

> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

*Id*.

The ALJ found that Plaintiff' mental impairment did not meet or medically equal a listed impairment prior to November 15, 2017, reasoning as follows:

> In understanding, remembering or applying information, the claimant had a moderate limitation. The claimant has a Master's Degree and a skilled work history as a high school teacher (Exhibit 3E, notes of testimony). She has a history of TBI [traumatic brain injury] and post-concussion syndrome. She had difficulty with her memory, completing tasks, concentration, understanding, and following instructions. She had cognitive deficiencies. She could not finish what she started or follow instructions (Exhibit 4E). The claimant had slowed processing, impaired memory, and mild to moderate depression and anxiety. It was found that the claimant's cognition was affected by factors that were impeding her recovery, such as current emotional state, lack of sleep, chronic pain, and stress (Exhibit 5F).
>
> In interacting with others, the claimant had a moderate limitation. Following her accident at the time of the alleged onset date, the claimant socially isolated and was withdrawn. The claimant did very little outside of her home due to PTSD and anxiety. She could shop once or twice a week and attend doctors' appointments weekly. The claimant spent time with her mother who helped her with chores, such as cooking and sewing. She spoke with or spent time with friends about once a week. She attended church twice a month. The claimant was untrusting and paranoid. She felt anxious and paranoid around authority figures (Exhibit 4E). She reported having panic attacks and sensory issues in crowds (Exhibit 9F).
>
> With regard to concentrating, persisting or maintaining pace, the claimant had a moderate limitation. The claimant had some confusion in thought processes. She had impaired reasoning ability and impaired memory. She experienced recurring dreams and anxiety related to her accident. She exhibited slow thinking and speech. She struggled to get out of the house. She felt paranoid and panicked. She was frustrated with her treatment and medications. She was distressed and had high anxiety (Exhibit 9F). She discussed personal stressors related to pain and increased frustration and anxiety (Exhibit 78F).
>
> As for adapting or managing oneself, the claimant experienced a moderate limitation. The claimant began her day exhausted and with a headache or migraine. She spent the majority of the day sleeping or going to the doctor. She was nauseous, uncomfortable, and tired. She went to bed early. She could not sleep more than a couple hours straight. She could prepare only simple meals and do light household chores. She was weak when doing laundry, cleaning, and her chores took longer

> than usual. She needed reminders for personal needs and medications. She had difficulty with personal care due to dizziness and unsteadiness. She did everything slowly. She tired very quickly and was unstable on her feet. The claimant did very little outside due to PTSD and anxiety. She could shop once or twice a week and attend doctors' appointments weekly. She had difficulty managing money. She had difficulty with stress and changes in routine (Exhibit 4E).
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

R. 18–19; *see also* R. 19–20 (finding that Plaintiff did not satisfy the criteria for paragraph C).[7]

The ALJ expressly considered the state agency opinions at the initial review level, which found only moderate and mild limitations in the paragraph B criteria, and found those opinions persuasive:

> At the initial level of review, prior to their established onset date of November 15, 2017, the State agency psychological consultants found moderate limitations in all paragraph B criteria. They concluded that the claimant was not able to perform complex/detailed procedures, but she was able to perform simple tasks (Exhibits 1A [R. 103–16], 44F [R. 2371–72], 45F [R. 2373–74]).
>
> \*\*\*
>
> The State agency … psychological opinions are persuasive. The State agency has extensive program knowledge and they performed a thorough review of the claimant's treating history prior to the established onset date. [P]sychiatric records suggest moderate limitations in functioning for the same period, as the claimant managed her symptoms with medications and outpatient therapy alone. She remained functional in daily activities. Although the claimant submitted a large volume of evidence at the hearing level, the majority of such evidence is duplicative of earlier evidence or relates to the period after November 15, 2017. Accordingly,

---

[7] The Court notes that the ALJ considered Listings 12.04, which addressed depressive, bipolar and related disorders; 12.06, which addressed anxiety and obsessive-compulsive disorders; and 12.15, which addressed trauma- and stressor-related disorders, R. 18–20; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, 12.06, 12.15, but did not expressly consider Listing 12.02. R. 16–20. However, because the Paragraph B criteria of all those listings are identical, the ALJ's analysis of the Paragraph B criteria of Listings 12.04, 12.06, and 12.15 would therefore apply equally to an analysis of Listing 12.02. The ALJ's failure to expressly refer to the criteria of Listing 12.02 is therefore not fatal to her decision. *See Lopez v. Comm'r of Soc. Sec.*, 270 F. App'x 119, 121 (3d Cir. 2008).

> the undersigned finds that the State agency opinions are consistent with the evidence for the relevant period.

R. 28.

Notably, however, the ALJ did not expressly evaluate Dr. Williamson's consultative evaluation report, nor did she expressly evaluate Dr. Kleinman's opinion that, based on Dr. Williamson's findings, Plaintiff's impairment met the criteria of a listing only as of November 15, 2017. *See generally* R. 13–30. An ALJ is required to evaluate all record evidence. *See Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's failure in this regard is particularly problematic because Dr. Kleinman's opinion appears to have been based exclusively on Dr. Williamson's consultative psychological evaluation and Plaintiff's extremely low IQ scores, and Dr. Kleinman's fixing of Plaintiff's disability onset date at three months prior to that examination, rather than at the date on which Plaintiff suffered the traumatic brain injury that caused those low IQ scores, is itself unexplained and appears to be wholly arbitrary. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. The ALJ's decision did not meet this standard.

Under these circumstances, the Court cannot conclude that the ALJ's decision that Plaintiff was not disabled by reason of her traumatic brain injury prior to November 15, 2017, is supported by substantial evidence.

Accordingly, this Court concludes that remand of the matter for further consideration is appropriate even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits for the period at issue in this case. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation.");

*Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").[8]

## VI.  CONCLUSION

For these reasons, the Court the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  May 17, 2022                       *s/Norah McCann King*
                                          NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE

---

[8] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the findings and opinions of Dr. Williamson and Dr. Kleinman, the Court does not consider those claims.